# United States Court of Appeals
## For the First Circuit

No. 10-2163

UNITED STATES OF AMERICA,

Appellee,

v.

FREDERICK GATES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Howard, Circuit Judges.

Todd A. Bussert, with whom Frost Bussert, LLC was on brief,
for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, was on brief, for
appellee.

March 1, 2013

**SELYA**, **Circuit Judge**.  Appalled by his conviction and sentence on drug-trafficking charges, defendant-appellant Frederick Gates seeks to wipe the slate clean.  His appeal presents, among other issues, important questions of first impression in this circuit about the operation of the Speedy Trial Act (STA), 18 U.S.C. § 3161.

The defendant's arguments are forcefully advanced but, when their reverberations subside, they prove to be untenable. Accordingly, we affirm the judgment below.

## I.  TRAVEL OF THE CASE

On February 27, 2008, a federal grand jury sitting in the District of Maine indicted the defendant for conspiring to distribute cocaine base (crack cocaine) and for the substantive offense of possessing the drug with the intent to distribute it. See 21 U.S.C. §§ 841(a)(1), 846.  In a superseding indictment, the grand jury expanded the temporal scope of the charged conspiracy.

The defendant initially maintained his innocence. Through a succession of court-appointed attorneys, he filed a salmagundi of pretrial motions, including motions to suppress certain evidence and to dismiss the indictment on speedy trial grounds.  When all of these motions came to naught, see United States v. Gates (Gates I), No. 08-42-P-H, 2008 WL 5382285 (D. Me. Dec. 19, 2008) (motions to suppress); United States v. Gates (Gates

II), 650 F. Supp. 2d 81 (D. Me. 2009) (motion to dismiss), the case went to trial.

On the second trial day, the defendant shifted direction and entered a conditional guilty plea. Fed. R. Crim. P. 11(a)(2). The tendered plea reserved the right to contest the district court's earlier denials of his motions to suppress and to dismiss. The district court accepted the conditional plea and ordered the preparation of a presentence investigation report (PSI Report).

The probation department issued a draft of the PSI Report on November 12, 2009. At that juncture, the defendant had a change of heart: he moved pro se to withdraw his guilty plea and requested a new (court-appointed) attorney. The district court appointed replacement counsel — the defendant's fifth attorney — who filed an amended motion for withdrawal of the plea. The government opposed the motion and, in due course, the court rejected the defendant's importunings. See United States v. Gates (Gates III), 698 F. Supp. 2d 212, 219 (D. Me. 2010). The court sentenced the defendant to serve 240 months in prison. This timely appeal ensued. In this court, the defendant is represented by yet another court-appointed attorney (his sixth).

## II. ANALYSIS

The defendant's asseverational array has four main elements. We address them sequentially.

-3-

### A. Suppression.

Prior to trial, the defendant moved to suppress the fruits of both a motor vehicle stop and a residential search. The district court referred these motions to a magistrate judge. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Crim. P. 59(b)(1). Following an evidentiary hearing, the magistrate judge recommended that both motions be denied. See Gates I, 2008 WL 5382285, at *13. The district court, over the defendant's objections, adopted the recommended decision.[1] On appeal, the defendant assigns error to this ruling.

In reviewing a district court's denial of a motion to suppress, we assess factual findings for clear error. United States v. Fagan, 577 F.3d 10, 12 (1st Cir. 2009). This deferential standard requires us to "proceed circumspectly and with regard for the district court's superior vantage point." United States v. Espinoza, 490 F.3d 41, 46 (1st Cir. 2007). Conversely, the district court's answers to abstract questions of law engender de novo review. See Fagan, 577 F.3d at 12.

1. The Motor Vehicle Stop. Consistent with the standard of review, we recount the facts relevant to the motor vehicle stop as supportably found by the district court. At around 11:00 a.m.

---

[1] For ease in exposition, we do not distinguish hereafter between the magistrate judge and the district judge. Rather, we take an institutional view and refer to them collectively as "the district court."

on September 19, 2007, the defendant was operating a Chevrolet Tahoe with Maine license tags on Interstate Route 85 in Gaston County, North Carolina. A patrol officer, William Hall, clocked the defendant's vehicle at a speed of 77 miles per hour (12 miles above the posted limit).

Hall initiated a traffic stop. He approached the Tahoe and asked the defendant, who appeared nervous, for his driver's license. He then inquired about the defendant's destination.

Hall called for backup and for a canine unit. After reinforcements arrived, another officer, Brent Roberts, approached the passenger; in the process, he observed a white object behind the driver's seat that he thought might be a set of digital scales and a substance that appeared to be marijuana residue in the center console.

Officer Hall ran a computerized criminal history search, which revealed that the defendant had a significant record. At approximately 11:21 a.m., Hall instructed the defendant to step out of the vehicle. When the defendant complied, Hall issued him a warning for the speeding violation. Hall indicated that he would "like to run [his] canine around [the] car," and the defendant consented. Hall also conducted a pat-down search, which turned up a large sum of cash and several cell phones.

The dog subsequently "alerted" to the front passenger side of the vehicle, thus indicating the presence of contraband.

When this occurred, the defendant's passenger admitted to having smoked marijuana and produced a small bag of it.

The defendant says that the avails of this vehicle stop ought to have been suppressed. We do not agree.

Judicial review of investigatory stops, commonly known as Terry stops, see Terry v. Ohio, 392 U.S. 1, 19-21 (1968), demands a two-tiered evaluation.[2] First, the stop must be justified at its inception. See United States v. Ruidíaz, 529 F.3d 25, 28 (1st Cir. 2008). Second, actions undertaken during the stop must be reasonably related in scope to the stop itself "unless the police have a basis for expanding their investigation." United States v. Henderson, 463 F.3d 27, 45 (1st Cir. 2006).

In the Terry milieu, reasonable suspicion is the touchstone for an initial stop. Ruidíaz, 529 F.3d at 28. While reasonable suspicion is a fluid concept that lacks precise definition, it is common ground that "reasonable suspicion requires more than a mere hunch but less than probable cause." Id. at 29. An inquiring court must examine the totality of the circumstances "to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." United States v.

_____

[2] North Carolina lies within the geographic borders of the Fourth Circuit whereas Maine lies within the First Circuit. The parties squabble over whether Fourth Circuit precedents, rather than First Circuit precedents, should apply to this issue. This contretemps suggests a false dichotomy: the legitimacy of a Terry stop is a matter of federal constitutional law. Geography does not matter.

<u>Arvizu</u>, 534 U.S. 266, 273 (2002) (internal quotation marks omitted).

At the second tier, the court must scrutinize "whether the officer's subsequent actions were fairly responsive to the emerging tableau." <u>United States</u> v. <u>Chhien</u>, 266 F.3d 1, 6 (1st Cir. 2001). Although such actions ordinarily must bear some relation to the purpose of the initial stop, an officer "may shift his focus and increase the scope of his investigation by degrees if his suspicions mount during the course of the detention." <u>Id.</u>

In the case at hand, the defendant does not challenge the officers' actions during the vehicle stop. Instead, he confines his attack to the first tier of the <u>Terry</u> framework and asserts that Hall did not have reasonable suspicion to make the initial stop. The alleged speeding, he says, was merely a pretext. This assertion need not detain us.

In his motion to suppress, the defendant explicitly "concede[d] that based upon his speed Officer Hall had a reasonable articulable suspicion to effect a traffic stop of his vehicle." This concession corresponds to the officer's account and no more is exigible to render the stop legitimate. <u>See</u> <u>Whren</u> v. <u>United States</u>, 517 U.S. 806, 812-13 (1996) (holding that the appropriate Fourth Amendment test is one of objective reasonableness); <u>Ruidíaz</u>, 529 F.3d at 29 (same). That ends this aspect of the matter: a party cannot concede an issue in the district court and later, on

appeal, attempt to repudiate that concession and resurrect the issue. To hold otherwise would be to allow a litigant to lead a trial court down a primrose path and later, on appeal, profit from the invited error. We will not sanction such tactics. Cf. Merchant v. Ruhle, 740 F.2d 86, 92 (1st Cir. 1984) (warning against permitting the use of "agreeable acquiescence to perceivable error as a weapon of appellate advocacy").

2. The Residential Search. We turn next to the defendant's motion to suppress evidence seized during a search of his home in Maine. To set the stage, we rehearse the relevant facts as supportably found by the district court.

On August 29, 2007, local authorities arrested the defendant in Maine on a charge of operating a motor vehicle under the influence of intoxicants. A state magistrate released him on bail conditions, which provided among other things that he would not use or possess any alcoholic beverages or illegal drugs and that he would "submit to searches of [his] person, vehicle and residence . . . upon articulable suspicion."

The defendant was arrested again some six weeks later — this time on charges of disorderly conduct and resisting arrest. He was again released on bail, subject to the alcohol and drug conditions described above. His new bail conditions, however, contained a significant change: they stipulated that he would "submit to searches of [his] person, vehicle and residence . . . at

any time without articulable suspicion or probable cause" (emphasis supplied).

On November 13, 2007, these bail conditions remained in effect. On that date, police officers in Lewiston, Maine observed the defendant leaving a convenience store with a brown bag that appeared to contain a six-pack or a twelve-pack of a beverage. A uniformed police officer, Brian Rose, stopped the defendant when he was approximately 100 feet away from his apartment. Rose confirmed the defendant's bail conditions with him and found that the defendant was carrying beer. Rose and other officers arrested the defendant for this bail violation. Rose then told the defendant that the officers planned to search his residence pursuant to his bail conditions. The defendant replied with words to the effect of, "Yeah, whatever." Without objection, one of the officers took the defendant's apartment key and used it to gain access to his residence. The ensuing search turned up drugs and drug-related paraphernalia.

Before us, the defendant castigates the residential search as unlawful and insists that the discovered contraband should have been suppressed. This remonstrance ignores the district court's supportable finding that the defendant consented to the search. See Gates I, 2008 WL 5382285, at *12. Without a showing that his consent was unlawfully obtained, the defendant cannot be heard to complain that the search itself was illegal.

See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); United States v. Stierhoff, 549 F.3d 19, 23 (1st Cir. 2008).

In all events, the district court took a belt-and-suspenders approach: it also supportably found that the search was independently justified by the extant bail conditions. After all, the defendant had agreed, as part of his bail conditions incident to the charges of disorderly conduct and resisting arrest, to submit to searches of his person and residence at any time, even in the absence of articulable suspicion. We see no reason why we should not give the plain language of such a bail condition force and effect. Cf. Samson v. California, 547 U.S. 843, 852-57 (2006) (holding that a suspicionless search of a parolee did not violate the Fourth Amendment where the parolee had previously submitted to a parole condition authorizing such searches); United States v. Barner, 666 F.3d 79, 81, 84-86 (2d Cir. 2012) (approving warrantless search when parole condition provided that parolee's "person, residence and property [were] subject to search and inspection" (alteration in original)).

## B. **Speedy Trial**.

The defendant assails the district court's refusal to dismiss the indictment on speedy trial grounds.[3]

_____

[3] In his motion to dismiss, the defendant also alleged a violation of his constitutional right to a speedy trial. See U.S. Const. amend. VI. The district court rejected this plaint, see Gates II, 650 F. Supp. 2d at 88, and the defendant does not renew it on appeal.

The STA provides generally that, upon motion, an indictment must be dismissed if the defendant's trial has not commenced within 70 days from the latter of the return of the indictment or the defendant's first appearance before a judicial officer.  18 U.S.C. § 3161(c)(1).  This 70-day limit is not absolute; the STA contemplates that certain periods of time shall be excluded.  See id. § 3161(h).  In this venue, the defendant complains that several periods of time were improperly excluded under the STA.

We review excludability determinations for abuse of discretion.  United States v. Vega Molina, 407 F.3d 511, 532 (1st Cir. 2005).  We are mindful, however, that a material error of law invariably constitutes an abuse of discretion.  United States v. Snyder, 136 F.3d 65, 67 (1st Cir. 1998).

In this case, the parties agree that the speedy trial clock began to tick on March 5, 2008 — the day after the defendant's arraignment.  The defendant's trial commenced on September 22, 2009 (some 566 days later).  Both sides agree that a minimum of 41 days was non-excludable. The district court excluded the rest of the intervening time in a series of orders.  The defendant's claim of error attempts to challenge some of those orders.

Although the defendant's argument on appeal is sprawling, the record below frames the legitimate parameters of the debate.

In his motion to dismiss, the defendant explicitly challenged the exclusion of only two periods: March 24 to April 11, 2008 (the time between the filing of the motion to extend the pretrial motions deadline and the filing of the first suppression motion), and February 12 to March 25, 2009 (the time between the court's disposition of the suppression motions and the defendant's first attorney's motion to withdraw). The district court excluded both periods by granting defense counsel's motions for extensions of time.[4] Generally speaking, exclusions of this type are permitted under the STA, which authorizes, inter alia, exclusions of:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

---

[4] With respect to the first period, the district court excluded the time in two separate orders (the first excluded the time from March 24 to April 4 and the second excluded the time from April 4 to April 11).

18 U.S.C. § 3161(h)(7)(A). In keeping with this provision, the three challenged exclusion decisions incorporated specific ends of justice findings.

In support of his motion to dismiss, the defendant proffered an affidavit stating that he did not receive any timely advice about his speedy trial rights and had not been asked to consent to his attorney's requests for the periods of delay. The district court denied the motion to dismiss, concluding that defense counsel may waive a defendant's rights under the STA and that, therefore, the challenged periods were properly excluded. Gates II, 650 F. Supp. 2d at 84-85.

Before us, the defendant again complains that his attorney's consent was impuissant because his attorney opted to seek additional time without first securing his permission. This complaint hinges on the proposition that a defendant's personal consent is always required for continuances that entail a waiver of speedy trial rights. We reject this proposition; a defendant's lawyer may seek a continuance and the concomitant exclusion of time for STA purposes without first securing the defendant's personal consent. We explain briefly.

The plain text of the STA authorizes courts to grant continuances "at the request of the defendant or his counsel." 18 U.S.C. § 3161(h)(7)(A) (emphasis supplied). We are confident that this statutory provision says what it means and means what it says.

-13-

So read, the thrust of the provision comports with the well-settled principle that express consent by counsel is controlling with respect to scheduling and trial management matters without any requirement that the defendant personally acquiesce. See New York v. Hill, 528 U.S. 110, 115 (2000); Taylor v. Illinois, 484 U.S. 400, 417-18 (1988); cf. Gonzalez v. United States, 553 U.S. 242, 250 (2008) (explaining that "[t]o hold that every instance of waiver requires the personal consent of the client himself or herself would be impractical"). In such instances, "the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." Hill, 528 U.S. at 115 (internal quotation marks omitted). Several courts have applied this principle in the STA context. See, e.g., United States v. Bryant, 134 F.3d 364 (4th Cir. 1998) (unpublished table decision) (stating, in STA context, that the district judge was entitled to conclude that the defendant's counsel spoke for him); United States v. Fields, 39 F.3d 439, 443 (3d Cir. 1994) (finding fault with defendant's argument that "he would have us order the dismissal of his indictment based on continuances that his own attorney sought"); United States v. Troy, 564 F. Supp. 2d 42, 47 (D. Me. 2008) (noting, in STA context, that "[t]he adversary process could not function effectively if every tactical decision required client approval" (internal quotation marks omitted)).

-14-

We agree with these authorities. We hold, therefore, that in the ordinary course and within the confines of the STA exclusion provisions, defense counsel has the power to seek an STA continuance without first informing his client or obtaining his client's personal consent. See Hill, 528 U.S. at 115 (holding that attorney's statement, without any showing of client's explicit consent, could waive speedy trial right under Interstate Agreement on Detainers).

To be sure, there may be exceptional circumstances in which an attorney's naked imprimatur can be called into question. Such circumstances could include, say, a lawyer's intentional foot-dragging for his own purposes and to his client's detriment. Cf. United States v. Pringle, 751 F.2d 419, 429 (1st Cir. 1984) (stating that the STA "is as much aimed at the delay caused by judicial congestion and mismanagement as it is aimed at the deliberate stalling of counsel"). Similarly, a defendant's contemporaneous objection to his lawyer's request for an extension of time would be a datum for the district court to consider in its analysis of the ends of justice.

In all events, there are safeguards within the STA framework that protect against this potential for a miscarriage of justice. In requiring the district court to make findings that "the ends of justice [are] served" by granting a continuance, the STA demands that the court consider "the best interest of the

public" as well as the defendant's stake in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). To ensure the effectiveness of this safeguard, the STA limns the factors that a judge must consider in determining whether to grant a continuance. See id. § 3161(h)(7)(B). It also identifies impermissible rationales. See id. § 3161(h)(7)(C) ("No continuance . . . shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government."). In our view, these statutory limitations on the district court's ability to grant STA continuances provide a prophylaxis that is adequate to guard against potential abuses by defense counsel.

With respect to the three exclusion orders challenged below, we discern no error in the district court's ends of justice determinations. In connection with the exclusion of the first block of time, the defendant says that exclusion was improper because of the prosecution's belated responses to discovery requests. It is true that in moving to exclude the period from March 24 to April 11, 2008, defense counsel represented that he needed more time to review discovery provided by the government. But the record reflects that the government complied with most of its discovery obligations within 30 days of the defendant's arraignment. The fact that defense counsel needed more time does not suggest, let alone demonstrate, that the government was

-16-

unreasonably tardy in fulfilling its responsibilities. We find no clear evidence of prosecutorial misconduct and no special circumstances suggesting that the district court should have looked behind defense counsel's consent in order to promote the ends of justice. Cf. id. § 3161(h)(7)(B) (stating that the factors "which a judge shall consider in determining whether to grant a continuance" include "[w]hether the failure to grant such a continuance . . . would deny counsel . . . the reasonable time necessary for effective preparation").

The defendant's then-counsel offered equally plausible reasons for excluding the second period of time identified in the motion to dismiss. The district court considered those reasons and found them sufficient. See id. § 3161(h)(7)(A). There is nothing in the record, fairly read, that compels us to find an abuse of discretion.

The defendant does not go quietly into this bleak night. He questions some of the reasons offered in support of these and other exclusions. He says, for example, that untoward delays were caused, at least in part, by defense counsel's vacation plans, prosecutorial stalling, and the district court's "languid approach" to scheduling.

We need not tarry over the attorney's vacation plans. Defense lawyers are not automatons; they are not expected to work 365 days a year. A reasonable vacation constitutes a plausible

-17-

basis for excluding a relatively brief period of time under the STA.  See, e.g., United States v. Trotman, 406 F. App'x 799, 806 (4th Cir. 2011); see also Pringle, 751 F.2d at 432 (stating that the legislative history of the STA "indicates that scheduling conflicts of either defense or government counsel were intended by Congress to be legitimate grounds for granting a continuance").

The defendant's other complaints are no more powerful. We recognize that, in extreme cases, delaying tactics by a prosecutor or a court's chronic inattention to its docket might be so rebarbative as to comprise the special circumstances needed to override defense counsel's waiver of his client's speedy trial rights and impel the trial court to find that a requested continuance is at odds with the ends of justice.  But we have perused the record in this case with care and we conclude that neither the government's conduct nor the district court's management of its busy calendar was beyond the pale.

In an effort to change the trajectory of the debate, the defendant tries to widen the field of battle.  He challenges for the first time on appeal the excludability of several additional time periods.  This challenge comes too late.  We hold that an appellant who seeks to contest the exclusion of periods of time not challenged in the district court has waived his right to challenge such periods on appeal.

This conclusion is supported by both statutory text and relevant precedent. The plain language of the STA provides that "[f]ailure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under [the STA]." 18 U.S.C. § 3162(a)(2). The statute further provides that "[t]he defendant shall have the burden of proof of supporting such motion," id., which includes the burden of identifying STA violations in the district court, see Zedner v. United States, 547 U.S. 489, 502-03 (2006). To avoid a finding of waiver, therefore, a defendant must raise any potential STA violations before the district court in a motion to dismiss. Cf. United States v. Connor, 926 F.2d 81, 84 (1st Cir. 1991) (holding that a defendant waives the contention that a particular period was not excludable under the STA where the period post-dates the filing of his motion to dismiss and he does not renew his motion).

In fashioning this holding, we do not write on a pristine page. Three other courts of appeals have concluded, as we do, that exclusions of time not specifically challenged in a motion to dismiss are deemed waived. See, e.g., United States v. Vallone, 698 F.3d 416, 448 (7th Cir. 2012); United States v. Oberoi, 547 F.3d 436, 458 (2d Cir. 2008), vacated on other grounds, 130 S. Ct. 1878 (2010); United States v. White, 129 F. App'x 197, 201 (6th Cir. 2005). We ourselves have previously hinted broadly at the same conclusion. See United States v. Valdivia, 680 F.3d 33, 41-42

(1st Cir. 2012) (stating that where an appellant seeks to contest the exclusion of periods of time not challenged below, "there is a strong basis for finding the argument waived").

The finding of waiver lays to rest the defendant's claims that periods of time not specifically identified in his motion to dismiss were improperly excluded. Waived arguments are for the most part unreviewable, see United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002); and the waived arguments here fall within the general rule, not within the long-odds exception to it.

The upshot is that defense counsel proposed, and on his client's behalf consented to, exclusions of time for STA purposes. The defendant, through new counsel, subsequently moved to dismiss the indictment, specifically challenging two (and only two) of these excluded periods. The district court denied this motion. We conclude that the district court complied with the STA's exclusion provisions in granting these contested continuances and, therefore, appropriately denied the motion to dismiss. The defendant's challenges to other excluded periods were not raised below and are waived. Viewed through the prism of these conclusions, the district court did not err in denying the defendant's motion to dismiss.

## C. __Plea Withdrawal__.

Approximately two months after pleading guilty but prior to sentencing, the defendant sought both a withdrawal of his guilty

plea and a change of counsel.  The court appointed new counsel (the defendant's fifth court-appointed lawyer), who filed an amended motion for withdrawal of the guilty plea.  The court denied the motion, emphasizing the voluntariness of the plea and the dubiousness of the defendant's claim of innocence.  Gates III, 698 F. Supp. 2d 212.  The defendant assigns error to this ruling.

A defendant does not have an absolute right to withdraw a guilty plea.  See United States v. Negrón-Narváez, 403 F.3d 33, 36 (1st Cir. 2005).  But a district court may allow withdrawal of a previously entered guilty plea as long as a "fair and just reason" for rescinding the plea exists.  Fed. R. Crim. P. 11(d)(2)(B); see United States v. Pellerito, 878 F.2d 1535, 1537 (1st Cir. 1989).  In appraising such a motion, a court ordinarily should begin by considering whether the plea, when entered, was voluntary, intelligent, and informed.  See United States v. McDonald, 121 F.3d 7, 11 (1st Cir. 1997); United States v. Gonzalez-Vazquez, 34 F.3d 19, 23 (1st Cir. 1994).  From that starting point, the inquiry customarily should expand to factors such as the strength of the reasons proffered by the defendant as a basis for withdrawing his plea, the timing of the motion, and the force of any assertion of legal innocence.  See United States v. Doyle, 981 F.2d 591, 594 (1st Cir. 1992).  "If the combined weight of these factors tilts in the defendant's favor," then the court

should consider "the quantum of prejudice, if any, that will inure to the government" should the motion be granted.  Id.

"[O]ther than for errors of law, we will disturb the trial judge's refusal to allow plea withdrawals only for demonstrable abuse of discretion."  Pellerito, 878 F.2d at 1538. In the plea-withdrawal context, as elsewhere, questions of law are subject to de novo review.  United States v. Padilla-Galarza, 351 F.3d 594, 597 & n.3 (1st Cir. 2003).  Findings of fact, however, can only be set aside if they are clearly erroneous.  Id.

The defendant suggests that his guilty plea was neither voluntary nor knowing because he made it based on his counsel's false assurances about sentencing outcomes.  This suggestion rests on his insistence that his counsel assured him that pleading guilty would position him favorably to receive credit for his acceptance of responsibility, see USSG §3E1.1, and a term of imprisonment at or near the mandatory minimum, see 21 U.S.C. § 841(b)(1)(A).

Pertinently, defense counsel acknowledged that he had explained to the defendant that one "benefit of a plea is [that] we will have in play the issue of acceptance of responsibility, and that will make a difference in terms of where the advisory guidelines intersect with the statutory minimum." Defense counsel elaborated on this point, noting that the defendant might be "preclude[d]" from receiving any credit for acceptance of responsibility because he did not plead guilty until mid-trial, and

that the issue of acceptance of responsibility would be "in contention at sentencing." These statements were accurate. See, e.g., USSG §3E1.1, comment. (n.2). They did not amount to false assurances, especially in light of the fact that the defendant confirmed at the change-of-plea hearing that no one made any promises to him regarding sentencing.

The remainder of the change-of-plea transcript is equally inhospitable to the defendant's revisionist account of history. The transcript demonstrates that the district court made a thorough inquiry into the voluntary and knowing character of the guilty plea, ensuring that the defendant understood both his right to proceed with trial and the possible consequences of a guilty plea. The court made transparently clear that the plea entailed no guaranteed sentencing outcome.

This brings us to the defendant's claim of innocence and his assertion that the district court acted arbitrarily in impugning it. We discern no impropriety. Merely voicing a claim of innocence has no weight in the plea-withdrawal calculus; to be given weight, the claim must be credible. See United States v. Sanchez-Barreto, 93 F.3d 17, 24 (1st Cir. 1996).

In this instance, the defendant's claim of innocence was not credible; it contradicted the change-of-plea colloquy in which he acknowledged that he committed the charged offenses. The defendant listened to the prosecutor's opening statement and the

-23-

testimony of the government's initial witnesses, heard the prosecutor vouch for that version of the case, accepted the accuracy of that version, and admitted his culpability.

A defendant is normally bound by the representations that he himself makes in open court at the time of his plea. See, e.g., Padilla-Galarza, 351 F.3d at 598; United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984). As we have said, such statements "are more likely to be reliable than later versions prompted by second thoughts." Padilla-Galarza, 351 F.3d at 598. In this case, the record contains nothing that would prompt us to depart from this salutary principle.[5]

The short of it is that the defendant's arguments for withdrawing his plea were weak and his claim of innocence was unpersuasive. It follows that the district court acted well within the ambit of its discretion in concluding that the defendant had not shown a fair and just reason for withdrawing his guilty plea.

### D. **Sentencing**.

The defendant's remaining claims of error implicate his sentence. In addressing these claims, we review the district court's interpretation and application of the sentencing guidelines de novo. See United States v. Parrilla Román, 485 F.3d 185, 190

---

[5] Indeed, the defendant's claim of innocence is undermined by other record evidence. It seems to be no accident that the defendant chose to plead guilty shortly after the highly incriminating trial testimony of his alleged coconspirator (Brandon Johnson).

-24-

(1st Cir. 2007). Subsidiary findings of fact, however, engender clear-error review. Id. If we are satisfied that no procedural irregularities occurred, we appraise the sentence imposed for abuse of discretion — a standard that is tantamount to review for reasonableness. Gall v. United States, 552 U.S. 38, 46 (2007).

The defendant posits that his due process rights were violated because the district court used unreliable and unsubstantiated information in constructing his guideline sentencing range (GSR). In this regard, he trains his sights on the court's reliance on information contained in the proffer of one of the government's cooperating witnesses, Kristy Nadeau. This untrustworthy information, he says, unfairly influenced the court's drug-quantity finding (and, thus, the court's calculation of the GSR).

The facts are straightforward. Nadeau's proffer vouchsafed that $16,100 seized from her apartment constituted drug proceeds that belonged to the defendant. The district court credited this statement, interpolated money into drugs, and used the resultant figure in deducing the total drug quantity attributable to the defendant.

We descry no clear error. The usual rules of evidence do not apply in sentencing proceedings. See United States v. Zapata, 589 F.3d 475, 485 (1st Cir. 2009). The district court may base sentencing determinations on any evidence that it reasonably deems

to be reliable.  See United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010).

Here, Nadeau's proffer was specific.  Nadeau herself was present at the disposition hearing, and the defendant had an opportunity (which he declined) to question her.  The sentencing judge, who had lived with the case for more than two years and had presided over the aborted trial, had a bird's-eye view of how the conspiracy operated.  Thus, he was in an enviable position to gauge the veracity of Nadeau's proffer.  In these circumstances, no clear error attended the district court's conclusion that the proffer was trustworthy.

Once we are satisfied on this point, the district court's calculation of the GSR appears to be bulletproof.  The court warrantably found a total of 414 grams of crack cocaine to be attributable to the defendant, yielding a base offense level of 32.  It then incorporated two enhancements, totaling six levels, for the defendant's leadership role, see USSG §3B1.1(a), and his obstruction of justice, see id. §3C1.1.  The court eschewed a downward adjustment for acceptance of responsibility, plausibly reasoning that the defendant's attempt to portray himself as innocent during the plea-withdrawal proceeding showed that he had not genuinely accepted responsibility for his criminal conduct.  Each of these adjustments is well-supported by the record.

In the absence of any procedural error, we are left with the question of the substantive reasonableness of the sentence imposed. Assuming favorably to the defendant that his amorphous due process argument can be read to encompass such a challenge, that challenge fails.

The sentencing guidelines are advisory, see United States v. Booker, 543 U.S. 220, 245 (2005), and the GSR is not controlling on the question of the substantive reasonableness of a particular sentence, see United States v. Jiménez-Beltre, 440 F.3d 514, 517-18 (1st Cir. 2006) (en banc). This does not mean, however, that the GSR is an irrelevancy: it informs an appellate court's view of the reasonableness of a sentence. See United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011). We start there.

Pairing the defendant's total offense level (38) with his criminal history category (III) produces a properly calculated GSR of 292-365 months. The district court made this calculation and, varying downward from it, imposed an incarcerative sentence of 240 months. The sentencing court noted that the defendant "has a serious criminal history which involves violence"; that he "has not been deterred by previous involvement with the law"; and that he functioned as "the ring leader" of "a very important drug conspiracy." Nevertheless, the "very substantial" GSR was, in the court's view, "greater than necessary to reflect the seriousness of

this offense and this defendant's involvement in it and his past criminal activities."

The record makes manifest that the court examined the totality of the circumstances, weighed the relevant factors, see 18 U.S.C. § 3553(a), and fashioned a sentence shaped to fit the contours of the crime of conviction. The resultant sentence fell 52 months below the nadir of the GSR. When the district court articulates a plausible rationale for the sentence imposed and reaches a sensible result, that result, virtually by definition, falls within the universe of reasonable sentencing outcomes. See United States v. Walker, 665 F.3d 212, 234 (1st Cir. 2011); Jiménez-Beltre, 440 F.3d at 519. So it is here.

## III. CONCLUSION

We need go no further. It is regrettable that this case took so long to reach a conclusion. But criminal cases cannot be expected to proceed with metronomic precision, and the progress of this case was slowed measurably by the defendant's desire, time and again, to secure the services of replacement counsel. Given the pitfalls that permeated the landscape, we think that the district court did an admirable job in getting the case to trial within a reasonable time. We conclude both that the defendant was justly convicted in a proceeding free from reversible error and that he was fairly sentenced.

**Affirmed**.