**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3984-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JUAN D. OSBORNE,

    Defendant-Appellant.

_____

Submitted May 8, 2017 — Decided May 24, 2017

Before Judges Nugent and Currier.

On appeal from Superior Court of New Jersey,
Law Division, Monmouth County, Indictment No.
13-05-0740.

Joseph E. Krakora, Public Defender, attorney
for appellant (Daniel V. Gautieri, Assistant
Deputy Public Defender, of counsel and on the
brief).

Christopher S. Porrino, Attorney General,
attorney for respondent (Sarah E. Ross, Deputy
Attorney General, of counsel and on the
brief).

PER CURIAM

    After losing a suppression motion, defendant Juan D. Osborne

pleaded guilty to third-degree possession of a controlled

dangerous substance (CDS), heroin, and a judge sentenced him to probation for one year. On appeal, defendant raises a single argument:

> ONCE THE POLICE, WHO WERE EXECUTING A WARRANT TO SEARCH A PARTICULAR APARTMENT, REALIZED OR SHOULD HAVE REALIZED THAT THEY WERE IN A BASEMENT THAT WAS SHARED WITH OTHER TENANTS, THEY ACTED UNREASONABLY IN SEARCHING THERE BECAUSE THEY LACKED PROBABLE CAUSE TO BELIEVE THAT ANY ITEM THEY DISCOVERED WAS THE DEFENDANT'S.

For the reasons that follow, we affirm.

In May 2013, a Monmouth County grand jury charged defendant in an indictment with five CDS offenses, including third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1). Following the indictment, defendant moved to suppress thirty bags of heroin police seized from the basement of the apartment house where he lived. The trial court denied the motion. Thereafter, defendant agreed to plead guilty to third-degree possession of heroin in exchange for the State recommending a non-custodial sentence and dismissing the indictment's remaining counts. The court sentenced defendant accordingly and imposed appropriate fines and penalties. Defendant appealed from the denial of his suppression motion.

Police conducted the search of defendant's apartment and the basement of the apartment building after obtaining a search warrant. Defendant does not dispute the warrant was lawfully

issued, nor does he challenge the search of his apartment. Rather, he challenges the search and seizure of CDS from the apartment building's basement.

Defendant lived in "Apartment #1" of an Asbury Park multi-family dwelling. The warrant described the building and defendant's residence as:

> A three story, multiple family dwelling with yellow siding, white trim around the windows and doors, and a charcoal gray shingled roof. To the right of the center of the front of the house is a gray staircase with a gray railing leading to a porch. To the right of the stairs is a white column supporting the porch roof. On the white column are the numbers "512" written in black. There are two doors accessed from the porch, one directly in front of the stairs and the other on the left end of the porch. To the left of the main door are two mailboxes black in color. To the left of the building is a concrete driveway that warps around to a parking area. In the middle of the back of the building is a white door which accesses apartment #1[.]

The warrant authorized the search of "the residence hereinabove-named including the curtilage and the shed."

During the hearing on defendant's suppression motion, Monmouth County Prosecutor's Detective Keith Finkelstein testified that on January 23, 2013, he and other law enforcement officers arrived at defendant's residence to execute the warrant. Detective Finkelstein described the residence as a "three-story house with

yellow siding" and noted the door to Apartment #1 was in the rear of the home.

Detective Finkelstein went to the rear of the house and knocked on defendant's apartment door, but received no answer. The detective checked the knob, noticed the door was unlocked, and entered the home. Upon entering the residence, Detective Finkelstein noticed a series of hallways providing access to a small bedroom, bathroom, living room and kitchen. Inside the kitchen was an unlocked door providing access to the basement. Detective Finkelstein opened the basement door and observed a "tiny landing in the stairs leading to the basement." The detective believed the basement was part of Apartment #1 because it was accessible from that apartment. The detective searched the basement and seized thirty bags of suspected heroin inside a red utility lamp.

According to Detective Finkelstein, the basement had two doors: the one providing access to the basement from defendant's apartment, and another leading to the exterior driveway. The door leading to the exterior driveway was secured by an exterior padlock.

In addition to Detective Finkelstein, the State presented the testimony of the building's landlord. The landlord explained that the building was a "modified single family home" with three

separate apartments, all of which were occupied on the date of the search. He further explained that the basement, which spanned the entire building, is accessible only by two doors — one from the kitchen of Apartment #1 and the other from an exterior door to the backyard, padlocked from the outside. The building's tenants had keys to the exterior padlocked door so they could check their fuse boxes. The landlord also testified that he and the other tenants stored some of their belongings in the basement. According to the landlord, the basement was a shared space; no tenant could place something in the basement that "would be protected from access from the other tenants."

The trial court found the testimony of both witnesses "straightforward and credible" and denied the motion. In an oral opinion delivered from the bench, the court found the tenants had a diminished expectation of privacy in the basement "based on the fact that [they all] had access to" the items stored therein. The court found the search of the basement was within the warrant's scope.

On appeal, defendant argues police unlawfully searched the basement "[b]ecause the police could not tell whose items were whose" and thus "lacked probable cause to believe that any particular items belonged to [defendant]." Defendant contends it was not objectively reasonable for Detective Finkelstein to

believe that only defendant had access to the basement, particularly in view of the landlord's testimony that the basement spanned the entire building. For these reasons, defendant argues the police should have contacted a judge by telephone to obtain a warrant for the basement or contacted the other tenants in the building to have them identify their belongings.

We review a decision on a motion to suppress evidence by "accord[ing] deference to the factual findings of the trial court[.]" State v. Scriven, 226 N.J. 20, 32 (2016) (citation omitted). Our review of a trial court's legal conclusions is plenary. State v. Rockford, 213 N.J. 424, 440 (2013) (citations omitted).

The Fourth Amendment to the Federal Constitution and Article I, Paragraph 7 of the New Jersey Constitution require that a search warrant "particularly" describe the area to be searched. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Although "pin-point precision" is not required, a warrant must describe the premises to be searched with reasonable accuracy. State v. Wright, 61 N.J. 146, 149 (1972) (citations omitted). Stated another way, the description of the premises requires no more than "practical accuracy." State v. Daniels, 46 N.J. 428, 437 (1966).

"[O]fficers searching a person's home . . . under authority of a search warrant are authorized to use only those investigatory

methods, and to search only those places, appropriate in light of the scope of the warrant." State v. Reldan, 100 N.J. 187, 195 (1985) (citing Harris v. United States, 331 U.S. 145, 152, 67 S. Ct. 1098, 1102, 91 L. Ed. 1399, 1407 (1947)). For these reasons, "[a]n analysis of the reasonableness of the methods used in a search, as well as the areas searched, should focus upon whether the search in its totality was consistent with the object of the search." Ibid.

In this regard, "certain 'structures have been deemed appurtenant to the premises specified in the search warrant, though not physically . . . under the purview of the warrant.'" Wayne R. LaFave, Search and Seizure — A Treatise on the Fourth Amendment, § 4.10(a) at 940 (5th ed. 2012) (quoting United States v. Fagan, 577 F.3d 10, 13 (1st Cir. 2009), cert. denied, Fagan v. United States, 559 U.S. 958, 130 S. Ct. 1556, 176 L. Ed. 2d 144 (2010)). "Structures that have been found to be appurtenant to described residential premises include storage closets, cabinets, storage rooms and bins, lockers, mailboxes, and birdhouses." Id. at 941.

Fagan involved a motion to suppress evidence seized from a storage closet by officers executing a search warrant for the neighboring apartment. Supra, 577 F.3d at 12. The court noted "[t]he Warrant Clause of the Fourth Amendment has been interpreted to permit searches not only of the premises specified in a warrant

but also of structures 'appurtenant' to those premises."  <u>Id.</u> at 11.  Explaining that "case law . . . provides very little guidance as to how courts should determine whether or not a given structure is appurtenant to described premises[,]" the court determined

> the standard to be applied is one of objective reasonableness.  So long as the officers executing the warrant have an objectively reasonable basis, in light of the known characteristics of the location and the evidence at hand, for concluding that a structure is appurtenant to the premises specified in the search warrant, that structure may validly be searched under the purview of the warrant.
>
> [<u>Id.</u> at 13 (citation omitted).]

The court noted case law provided "guideposts" for courts determining "[w]hether a searching officer reasonably could conclude that a specific structure is appurtenant to the premises specified in a particular search warrant."  <u>Id.</u> at 14.

> These include the proximity of the structure to the described premises, <u>see</u> [<u>United States v. Ware</u>, 890 <u>F.</u>2d 1008, 1011 (8th Cir. 1989)] (holding that a storage room next to an apartment was "near enough to alert the searching officers that it was an appurtenance of the apartment"); the location's layout and the context-specific relationship between the structure and the premises specified in the warrant, <u>see</u> [<u>United States v. Principe</u>, 499 <u>F.</u>2d 1135, 1137 (1st Cir. 1974)]; and extrinsic evidence, including evidence discovered during admittedly valid portions of the search, suggesting that the structure is appurtenant to the premises specified in the warrant, <u>see</u> <u>Ware</u>, [<u>supra</u>,] 890 <u>F.</u>2d at 1011

8

(observing that the defendant's key ring included keys to a storage room deemed appurtenant to the premises specified in the warrant).

[Ibid.]

Here, the officers who searched defendant's apartment could reasonably conclude the basement was appurtenant to the apartment. Defendant had immediate and unfettered access to the basement through an unlocked door in his apartment, which opened directly into the basement stairway. The only other means of ingress and egress to the basement was an exterior padlocked door. Thus, it appeared defendant had primary, if not exclusive, access to the basement connected to his apartment. Neither of the other two units in the building had a door leading to the basement. Under these circumstances, the trial court did not err by concluding the search of the basement did not exceed the scope of the warrant.

The trial court also concluded defendant had a diminished expectation of privacy in the basement because, as the landlord testified, the landlord and the other tenants had access to the basement to check fuse boxes and for storage. Defendant argues the trial court erred by finding the search was lawful in view of defendant's diminished expectation of privacy.

We have held in a somewhat different context — a superintendent of a multi-story, multi-unit apartment complex

giving consent to law enforcement officers to search a locked room in the building's basement used to store recycling material, to which the superintendent, the defendant, and one other person had keys — "a worker sharing locked work space cannot reasonably have an expectation of privacy where other workmen have access to the same work space." State v. Brown, 282 N.J. Super. 538, 547 (App. Div.), certif. denied, 143 N.J. 322 (1995). We further noted "a tenant does not have a reasonable expectation of privacy in the common areas of a building merely because doors to the common areas are normally kept locked and require a key for access." Id. at 547 (citing United States v. Concepcion, 942 F.2d 1170, 1171-72 (7th Cir. 1991)). Cf., State v. Saez, 268 N.J. Super. 250, 261 (App. Div. 1993) (holding the defendants had a reasonable expectation of privacy in their part of the basement partitioned off from the adjoining resident's part of the basement by a poorly constructed wooden wall that had holes or gaps through which law enforcement officers could observe drug activity), rev'd on other grounds, 139 N.J. 279, 280 (1995).

Here, whether defendant had a reasonable expectation of privacy in the basement is irrelevant, because the search of the basement was within the scope of the search warrant. No principle of New Jersey Constitutional law is inconsistent with the Fourth Amendment jurisprudential principle that appurtenances may be

A-3984-14T1

searched under the authority of a warrant issued for a particular residence.

We have considered defendant's remaining arguments and found them to be without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION