**UNITED STATES of America, Appellee,**

**v.**

**Richard DAVID, Defendant–Appellant.**

**No. 1492, Docket 95–1522.**

United States Court of Appeals,
Second Circuit.

Argued April 15, 1997.

Decided Nov. 25, 1997.

Kevin J. Perra, New York City (Douglas F. Broder, Omid Zareh, Coudert Brothers, New York City, of counsel), for Defendant–Appellant.

Randi S. Weinberg, Special Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Varuni Nelson, Arthur P. Hui, Assistant United States Attorneys, Brooklyn, NY, of counsel), for Appellee.

Before: WINTER, CABRANES and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Defendant-appellant Richard David appeals from an order of the United States District Court for the Eastern District of New York (Reena Raggi, *Judge*) denying his motion to release certain United States savings bonds owned by him but held by the government. David claims that his right to due process was violated because he was not given an opportunity to be heard within a reasonable time after the seizure of these bonds, and because the district court failed to hear evidence and find facts before rendering

a decision. We affirm the district court's denial of his motion.

## I. BACKGROUND

Following a four-year investigation into various racketeering and drug-related crimes committed in Queens and Brooklyn, New York, and elsewhere, federal officers arrested David and 34 others in June 1990. Incident to David's arrest, the officers seized numerous U.S. savings bonds, issued in the name of David, his wife Jane David, or both of them together.

Three indictments resulted from these arrests. In one, David and 14 others were charged with racketeering and drug enterprise counts, and narcotics and firearms violations. Two defendants of this group were murdered, and the others, including David, reached a plea bargain with the government. In May 1991, David pleaded guilty to a count in a superseding information charging him with involvement in a racketeering enterprise known as the "Pitera Crew," which was involved in murder, kidnapping, narcotics trafficking, and other crimes.

In January 1992, an Assistant United States Attorney ("AUSA") wrote to David's counsel and advised him that the government would agree to return 88 of the bonds seized from David, as they were issued solely in the name of Jane David. Once these bonds were returned, 39 bonds remained, 36 of which were owned by David and which listed his wife as beneficiary, one of which was owned by David "or" his wife, one of which was owned by David "and/or" his wife, and one of which was owned solely by David and listed no beneficiary.

In April 1993, David wrote to the government requesting return of the bonds and contending that he had purchased the bonds with legitimate funds. He referred to letters from the State Controller and the Unified Court System Office of Management Support of New York which, he claimed, supported his contention that the bonds had been purchased legitimately. Throughout May 1993, the government and David corresponded about the possibility of the government seeking forfeiture of the bonds or executing against them in satisfaction of David's fine.

David was sentenced by the district court on June 11, 1993. David agreed to plead guilty to a racketeering count and to a narcotics count, provided that the terms run concurrently. The court sentenced David to 20 years on the racketeering count and 10 years on the narcotics count, and ordered that the sentences run concurrently. The court also sentenced him to three years of supervised release on the racketeering count, lifetime supervised release on the narcotics count, and a $250,000 fine on each count. At the sentencing, an AUSA informed the court that the government would seek to collect on the bonds in partial payment of the fine. The court noted that it could not order forfeiture of the bonds, and briefly heard argument on the source of the money used to buy the bonds, but did not make any holding as to their disposition.

David appealed his conviction. This Court remanded his case by summary order for resentencing on May 27, 1994. The district court resentenced David on July 28, 1994. It dismissed the narcotics count but reinstated the 20 year sentence on the racketeering count, the three years of supervised release, and the $250,000 fine. Counsel for David requested that the fine be payable after the end of the supervised release, but the court denied the request, stating, "[i]f he's got the assets, why shouldn't the fine be paid promptly?" The amended judgment was dated August 21, 1994. The district court then executed another amended judgment on September 16, 1994, which modified the August judgment by providing that "[i]f ... after the completion of the three (3) year term of supervised release it is determined that the defendant cannot pay the fine, it may be forgiven."

On November 14, 1994, the government served David with a Restraining Notice pursuant to § 5222 of the New York Civil Practice Law and Rules. This Notice prohibited David from transferring any of his property until the fine was satisfied. The letter accompanying this Notice stated that the government would commence proceedings to enforce the judgment if David did not respond

in a timely fashion. During the following months, correspondence passed between the government and David discussing his participation in the Federal Bureau of Prisons Inmate Financial Responsibility Program. David did not request the return of the bonds in these letters.

On January 6, 1995, David, proceeding pro se, petitioned the district court to vacate his criminal fine on the ground that he was unable to pay it. David also complained that the Bureau of Prisons was collecting the money he earned in prison on a monthly basis, whereas his sentence had called for quarterly deductions. The district court treated David's complaint as a 28 U.S.C. § 2255 petition (CV–95–0218). In a Memorandum Opinion and Order dated April 27, 1995, the court stated that it would amend David's sentence so that his payments would be monthly. The court gave David until May 26, 1995 to respond.

On May 22, 1995, David, again proceeding pro se, filed a motion to release the bonds, arguing that the government had made no showing that the bonds had been obtained with illicit funds, and arguing that the de facto forfeiture of the bonds constituted a Double Jeopardy Clause violation. In an order dated May 26, 1995 the court instructed the government to respond by letter.

In an order dated June 1, 1995 the district court amended David's criminal judgment again, modifying the September, 1994 judgment so that it would be consistent with the Memorandum Opinion and Order of April 27, 1995.

In a letter dated June 15, 1995 the government (as instructed by the court) responded to David's motion for return of the bonds. It stated that it was in the process of seeking, as a judgment creditor, to have the Treasury Department liquidate the bonds and pay the proceeds to the court. It claimed authority for this procedure in federal regulations.

In an order dated June 20, 1995, the district court denied David's motion to release the bonds. David appealed this order on September 12, 1995, and this Court appointed counsel for him.

In October 1995 (after the notice of this appeal had been filed), David moved in the district court pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure for return of several items of personalty, including the bonds. This action was styled as a separate civil complaint (CV–95–4188). In an opinion dated May 16, 1996, the court noted that the government had consented to return some of the items, declined to release the remaining items (as they might be needed as evidence in David's coconspirators' cases), and declined to reconsider its previous denial of David's request to release the bonds. On June 6, 1996, David petitioned for a writ of error *coram nobis,* claiming that his criminal conviction violated the Double Jeopardy Clause because he had already been punished by the de facto forfeiture of his bonds at the time he was convicted. This action was also styled as a separate civil complaint (CV–96–3016). The district court rejected David's petition.

On September 10, 1996, the government moved in the district court, in the original criminal action, for an order authorizing the Department of the Treasury to liquidate 37 of the bonds, and to pay the proceeds to the clerk of the district court. Shortly thereafter the district court indicated that it would grant the government's motion unless it heard a valid objection from David within 20 days. David responded by filing a motion to stay the liquidation, pending this appeal. By order dated October 18, 1996 the district court granted David's motion for a stay.

## II. DISCUSSION

### A. *Due Process Ramifications of Delay Following Seizure*

■ David argues that he was denied due process because the government seized and held his bonds for over five years without providing him with an opportunity to be heard on the legality of the continued possession. He does not contest the validity of the seizure of the bonds; nor does he quibble with the fact that the government now has the right to execute against all of his assets as a judgment creditor. Instead, he argues that the government's post-seizure handling of David's bonds was so dilatory as to consti-

tute a due process violation, and that the government should therefore be required to return the bonds to him.

█ It is well settled that upon the termination of criminal proceedings, "seized property, other than contraband, should be returned to the rightful owner." *United States v. Francis*, 646 F.2d 251, 262 (6th Cir.1981), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981). However, the government may retain after trial seized property in which it has a "continuing interest"—that is, an interest beyond the property's use in the criminal proceedings. *See United States v. 608 Taylor Ave.*, 584 F.2d 1297, 1303 (3d Cir.1978)(citing forfeiture and tax liens as examples of such a continuing interest). The government's intention to use the bonds to offset a portion of David's criminal penalty constitutes such a "continuing interest" in the bonds, *see United States v. Duncan*, 918 F.2d 647, 654 (6th Cir.1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991), allowing it to hold the property for a reasonable period of time after the termination of criminal proceedings. The question before this Court, then, is only whether the government's delay in disposing of David's bonds following his conviction has been reasonable and hence consistent with due process.

The Supreme Court first addressed the question of when post-seizure delay constitutes a due process violation in *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) ("*$8,850*"). There, the Court established a four-factor test for determining whether the delay between the time property is seized and the time forfeiture proceedings commence constitutes a due process violation: "[1] length of delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant." 461 U.S. at 564, 103 S.Ct. at 2012. Second Circuit cases subsequent to *$8,850* have allowed significant delays based on these factors. *See, e.g, United States v. United States Currency in the Amount of $228,536.00*, 895 F.2d 908, 917 (2d Cir.1990) (delay of almost four years between seizure and commence-

ment of forfeiture action, and almost three years after guilty plea, was not a violation of due process because the claimant's criminal action was pending, the delay did not prejudice the claimant's defense of the forfeiture action, and there had been no indication that the claimant asserted a claim to the money prior to the forfeiture proceeding); *Mercado v. United States Customs Service*, 873 F.2d 641, 646 (2d Cir.1989) (seven-month delay between seizure and filing of forfeiture action was not a due process violation because the government needed time for investigation, claimant did not petition for relief from forfeiture, and claimant demonstrated no prejudice; thirteen-month delay between close of discovery and commencement of trial in forfeiture action was not a violation either, as the government had been ready for trial at any time).

█ While the facts of this case differ from our previous cases in· that the government here seeks execution rather than forfeiture, we nevertheless hold that the *$8,850* test is applicable. The Supreme Court there spoke in general terms of post-seizure delays, *see $8,850*, 461 U.S. at 562–63 (characterizing the case as one in which the Court will "determine[ ] when a post seizure delay may become so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time"), and the factors of the test there enunciated, suit the present situation well. We therefore apply the factors of *$8,850* to the facts of David's case.

The first factor is the length of the delay. Here, the delay between the seizure of the bonds in June 1990 and David's May 1995 motion—more than five years—is clearly significant. *Cf. $8,850*, 461 U.S. at 565, 103 S.Ct. at 2012–13 (deeming an 18–month delay between seizure and commencement of forfeiture proceedings "quite significant").

The second factor is the reason for the delay. Here, the government could, technically, have attempted to execute on the bonds after David's first sentencing in June 1993. There was, however, an appeal of David's criminal case pending at the time. In *$8,850*, the Supreme Court noted that "[p]ending criminal proceedings present ... justifica-

tions for delay in instituting civil forfeiture proceedings," *id.* at 567, 103 S.Ct. at 2013, and we believe the same to be true of execution proceedings. This Court disposed of David's appeal on May 27, 1994, and our decision called for resentencing, which the district court did on July 28, 1994. The court issued an amended judgment that was dated August 21, 1994, and then another amended judgment that was dated September 16, 1994. On January 6, 1995, David petitioned the district court to vacate his criminal fine on the ground that he was unable to pay it. Before the district court issued an order disposing of David's January motion, David filed a motion for return of the bonds—the motion that is the subject of the instant appeal. Thus, the only period in which David's case appeared to be finally resolved and during which the government did not begin formal execution proceedings was the period between July 28, 1994 and January 6, 1995—a little more than five months.

The third factor is the defendant's assertion of his right. In *$8850*, which concerned a claimant's attempt to obtain the return of cash seized by Customs officials, the Court noted three ways in which the claimant could trigger the filing of a forfeiture action:

> First, the claimant can file an equitable action seeking an order compelling the filing of the forfeiture action or return of the seized property. *See Slocum v. Mayberry*, 15 U.S. (2 Wheat.) 1, 10, 4 L.Ed. 169 (1817) (MARSHALL, C.J.). Less formally, the claimant could simply request that the Customs Service refer the matter to the United States Attorney. If the claimant believes the initial seizure was improper, he could file a motion under Fed.R.Crim.P. 41(e) for a return of the seized property.

461 U.S. at 569, 103 S.Ct. at 2014. Here, David wrote a letter in April 1993 to the U.S. Attorney's office that unequivocally requested return of the bonds. He stated, "I'm requesting that my United States Savings bonds that were purchased by Payroll deductions be returned to me." This was a sufficient assertion of David's rights.

The last factor is whether the delay prejudiced the claimant. Here, David has not demonstrated that his ability to defend against the liquidation of the bonds under the Treasury regulation has been prejudiced by the government's delay in executing against them: for example, he points to no witnesses or evidence that have been lost as a result of the delay.

Weighing these factors, we conclude that the delay involved in these proceedings did not violate David's right to due process. While David did make a request for the return of the bonds, it was not unreasonable for the government to postpone execution proceedings during the pendency of the appeal of David's criminal case and his § 2255 petition (seeking to have the fine vacated)—indeed any execution proceedings brought during these periods would likely have been stayed pending the resolution of the other actions. This factor and the fact that David has shown no prejudice in defending against an execution action render the period of less than six months between the resentencing and the petition well within the bounds of due process.

David argues that *United States v. 608 Taylor Avenue*, 584 F.2d 1297, 1304 (3d Cir. 1978) ("[D]ue process . . . requires forfeiture proceedings against seized property be brought without unreasonable delay."), and *United States v. One 1978 Cadillac Sedan De Ville*, 490 F.Supp. 725, 732 (S.D.N.Y.1980) (citing *608 Taylor Ave.*), require a different result. The principle of these cases—delay after seizure must not be unreasonable—is conceded by all. These cases do not, however, provide a standard of measurement under which the delay in David's case would be deemed unreasonable. In any event, *$8850* supersedes any arguably contrary prior case law and supports the government's position in this case.

David claims that if we hold that the delay was *not* a due process violation, we will be blessing the position that the government "may seize property and retain it indefinitely, without providing the rightful owner a hearing, if it has any hope of executing against the property as a judgment creditor." While we agree that the concerns raised by David are legitimate in the abstract, we do not agree that they are implicated by the facts of this case. The government's retention of the

bonds in this case was hardly "indefinite": criminal proceedings and proceedings initiated by David himself existed during the vast majority of the delay.

## B. *Procedural Requirements of a Motion for Return of Property*

■ David argues that his case should be remanded because the district court did not take evidence and make factual findings relating to his motion for release of the bonds. That is, even if he received process it was not as much as he was due. In this contention he relies on *Rufu v. United States,* 20 F.3d 63 (2d Cir.1994) (per curiam). In *Rufu,* we stated that if a criminal defendant's post-trial motion for return of seized property is "made after the termination of criminal proceedings against the defendant ... such a motion should be treated as a civil complaint for equitable relief." 20 F.3d at 65; *accord On-wubiko v. United States,* 969 F.2d 1392, 1397 (2d Cir.1992). We remanded in *Rufu* because, *inter alia,* the government had responded to the defendant's motion by letter rather than by formal answer, and because the district court had dismissed the motion without a formal motion to dismiss by the government. *See id.* David argues that the disposition of his motion was similarly procedurally defective because the government responded to his motion by letter and the district court ruled on it in the absence of a formal motion to dismiss.

What David fails to recognize, however, is that in *Rufu* there were numerous factual disputes which needed to be addressed but were not. In *Rufu,* the government claimed that various property had been returned to Rufu or his agent, while Rufu contended it had not been returned; there was also property which Rufu contended had been seized from him but which was not properly accounted for by any evidence in the record. Here, in contrast, there is virtually no factual dispute, either as to what property was in the government's possession, or as to the means by which it came into the government's possession. Since we have now ruled that the government's post-seizure handling of the bonds does not constitute a due process violation, the only remaining issue appears to be

whether the government may now execute against the bonds as a judgment creditor. David has previously argued that the government has failed to show that illicit funds were used to acquire the bonds, however, that fact is irrelevant to the issue of whether the bonds may be executed against for payment of David's fine.

■ We agree that there was a procedural defect in the proceedings below. The trial court's failure to treat David's post-trial motion for the return of his property (which motion was made after the termination of criminal proceedings) as a civil complaint for equitable relief was in error. However, we decline to vacate and remand on the basis of that error because the error was harmless. *See* Fed.R.Civ.P. 61. *See also Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946) (construing the "substantial rights" language of 28 U.S.C. § 391 (from which Rule 61 is derived), as requiring an assessment of "whether the error itself had substantial influence" on the outcome of the case); *United States v. 4003–4005 5th Ave., Brooklyn, NY,* 55 F.3d 78, 86 (2d Cir.1995)(the district court's failure to consider prejudice to the government in determining the admissibility of certain evidence in forfeiture proceedings was harmless error). David filed a subsequent motion for return of property, including the bonds, which specifically mentioned Rule 41(e) of the Federal Rules of Criminal Procedure, and which was treated as a civil complaint under *Rufu.* The defendant failed there, as he fails here, to point out any reason why he should be entitled to equitable relief. He failed there, as he fails here, to indicate any evidence that he would or could have proffered to contest the liquidation of the bonds and the application of the proceeds to his fine.

There remains pending in the district court the government's motion for an order authorizing the Department of Treasury to liquidate the bonds and to pay the proceeds to the clerk of the district court to be applied to the fine. That motion has been stayed pending this appeal. If David has any reasons why the bonds should not be liquidated, he has a final opportunity to present them to

**62**

the district court upon disposition of this appeal.

Requiring the district court to retroactively convert the pending motion to a civil action, at this point, would be overly formalistic and impose unnecessary burdens upon all parties.

### III. CONCLUSION

The June 20, 1995 order of the district court denying David's motion for return of the bonds is affirmed.