# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1425

_____

Allan Rodgers; Gregory Allan Rodgers,

*Plaintiffs - Appellants*,

v.

Daniel K. Knight; Brian Liebhart; Thomas Quintana; Lloyd Simons; Mark
Brotemarkle; Mike Valley; Kyle Lucas; Geoffrey Jones; Kenneth M. Burton;
Cassandra Rogers,

*Defendants - Appellees*,

Richard Hicks,

*Defendant*,

City of Columbia, Missouri; Boone County,

*Defendants - Appellees*,

United States of America,

*Intervenor*.

_____

No. 14-1454

_____

Raymond D'Sean Franklin; Robert Dewayne Franklin,

*Plaintiffs - Appellants*,

v.

Daniel K. Knight; Geoffrey Jones; Kenneth M. Burton; Richard Hicks; City of Columbia Missouri; Boone County,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: September 11, 2014
Filed: March 23, 2015

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

This is a consolidated appeal from two decisions of the district court.[1] Appellants Robert and Raymond Franklin in one case, and Allan and Greg Rodgers in another, brought suit under 42 U.S.C. § 1983 against law enforcement officials and municipalities. They alleged, as relevant on appeal, violations of rights under the First, Second, Fourth, Fifth, and Fourteenth Amendments. The claims relate to the seizure of firearms from the appellants and the arrests and prosecutions of Greg Rodgers and Raymond Franklin. In both cases, the district court granted summary judgment for the defendants on all claims. We affirm.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

-2-

I.

The Rodgers case involves an arrest of Greg Rodgers in August 2011, a subsequent search of his residence, a prosecution that was later dismissed, and the retention of seized firearms. Five police officers from Columbia, Missouri, arrested Greg at his apartment complex on August 12, 2011, on a municipal warrant for failure to appear in court. Greg was outside when officers approached, and he started to jog toward his apartment. When officers ordered Greg to stop, he turned around, took a Browning 9 millimeter pistol from his waistband, and threw the gun aside. After officers handcuffed him, Greg asserted that he had a Florida permit to carry a concealed weapon, but did not produce the permit. An arresting officer, Thomas Quintana, prepared a "Probable Cause Statement" for prosecutors that same day, alleging that Greg committed the offenses of unlawful use of weapons and resisting or interfering with arrest.

Later that month, police executed a warrant to search the "premises" of Greg's apartment for "ammunition and firearms and any other evidence related to the crime of unlawful possession of a weapon." Officers seized several firearms belonging to Greg Rodgers or his father, Allan Rodgers, from a locked storage closet below the stairs that led to Greg's second-floor apartment.

A county prosecutor then charged Greg with unlawful use of a firearm by carrying a concealed weapon. Later, after Greg's counsel notified the prosecutor in writing that Florida had issued Greg a permit to carry a concealed weapon, the prosecutor amended the charge to allege possession of a firearm by a "fugitive from justice." The prosecution's theory was that Greg was a fugitive from justice because he failed to appear in court on a summons that was issued for leaving the scene of a motor vehicle accident. The prosecutor also charged Greg with resisting arrest based on the August 12 incident.

The trial court dismissed the firearms charge, and the Missouri Court of Appeals affirmed on February 5, 2013. *State v. Rodgers*, 396 S.W.3d 398 (Mo. Ct. App. 2013). The court of appeals noted that "fugitive from justice" is not defined by statute, and that no case had defined the phrase in this context. *Id.* at 400-01. But the court concluded that the rule of lenity required strict construction of the ambiguous language in favor of Rodgers. *Id.* at 403. Thus, the court held that Greg was not a fugitive from justice and affirmed the dismissal of that charge. *Id.* at 404. The Missouri Supreme Court denied an application for transfer on April 30, 2013, and in May 2013, the prosecutor dismissed the remaining charge for resisting arrest.

In early 2012, Allan Rodgers asked the Boone County, Missouri, Prosecuting Attorney's Office to return his firearms that were seized during the search in August 2011. An assistant prosecuting attorney and the chief investigator at the prosecuting attorney's office directed the police department's evidence custodian in February 2012 to retain the firearms; the investigator noted that prosecutors would be refiling a criminal case against Greg. Eventually, a police captain authorized the evidence custodian to release Allan's firearms, and Allan reclaimed them on September 21, 2012. Greg requested return of his firearms on October 8, 2012, and police returned all but the Browning 9 millimeter pistol on October 22. Police eventually notified Greg on July 30, 2013, that he could pick up the Browning pistol.

II.

A.

Greg's lead argument on appeal is that county prosecutors and police officers arrested and prosecuted him without probable cause for unlawful use of a firearm by carrying a concealed weapon. Greg contends that there was no basis for that charge once he told the arresting officers that he had a permit from Florida to carry a concealed weapon. Alternatively, he asserts that he lawfully carried the firearm

because Missouri's prohibition on carrying concealed weapons does not apply when a person "is in his or her dwelling unit or upon premises over which the actor has possession, authority or control." Mo. Rev. Stat. § 571.030.3.

The prosecutors have absolute immunity for filing the charge, *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976), so the district court properly dismissed the claim against them. Greg appears to contend that police officers seized him without probable cause on August 12, but that claim fails because there was a warrant for Greg's arrest based on his failure to appear in court. The warrant justified the seizure whether or not other reasons articulated by the officers—including unlawful use of a weapon—were also sufficient.

Insofar as Greg alleged a malicious prosecution claim against police officers based on the filing of the concealed weapons charge, he has not demonstrated any damages arising from that action, so the claim was properly dismissed. *See Chi. Great W. Ry. Co. v. Robinson*, 243 F.2d 389, 391 (8th Cir. 1957). Prosecutors eventually amended the charge to allege unlawful possession as a fugitive from justice, and Greg was not tried on the concealed weapons allegation.

In any event, the police officers were at least entitled to qualified immunity on a Fourth Amendment claim for their role in recommending the unlawful use of weapons charge. The officers determined that Greg did not have a Missouri permit to carry a concealed weapon, and they were not required to accept Greg's assertion that he had been issued a permit from Florida—especially when Greg attempted to flee from police and did not carry such a permit on his person as required by Florida law. Fla. Stat. § 790.06. It was not clearly established that the officers, having developed probable cause for a concealed firearms offense, were required to investigate Greg's claim about a Florida permit; our precedent suggests the opposite. *Clayborn v. Struebing*, 734 F.3d 807, 809-10 (8th Cir. 2013). Although Greg reportedly informed different police officers about the Florida permit during a

previous encounter in January 2011, there was no evidence that the arresting officers in August 2011 knew that information.

Nor was it clearly established that probable cause was defeated by the "dwelling unit" exception for carrying concealed weapons in Missouri. No court had construed the meaning of "dwelling unit or . . . premises over which the actor has possession, authority or control," Mo. Rev. Stat. § 571.030.3, and there was Missouri authority suggesting that "a tenant does not have control of the common areas and thus does not possess them." *Motchan v. STL Cablevision, Inc.*, 796 S.W.2d 896, 900 (Mo. Ct. App. 1990). Officers reasonably could have believed that Greg was forbidden to carry a concealed weapon without a permit in common outdoor areas of the apartment complex. Therefore, officers are entitled to qualified immunity for recommending the firearms charge to county prosecutors.

B.

Greg next appeals the dismissal of claims relating to the execution of the search warrant at his apartment. He argues that an officer sought the warrant without probable cause to believe that Greg committed a firearms offense, because Greg's failure to appear in municipal court did not make him a "fugitive from justice" under Mo. Rev. Stat. § 571.070.1(2). A police officer applying for a search warrant is entitled to qualified immunity unless the warrant application is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986).

At the time of the warrant application, the phrase "fugitive from justice" was undefined by Missouri statute or case law, and the Missouri Court of Appeals later characterized a proper analysis of the meaning as "elusive." *Rodgers*, 396 S.W.3d at 402. Because the question was close, and it was not clearly established that "fugitive from justice" excluded a person with an outstanding arrest warrant for municipal

violations, it was reasonable for the officer seeking the warrant to believe that Greg's possession of firearms violated Missouri law. Therefore, the district court properly held that officers involved in procuring the warrant were entitled to qualified immunity.

Greg also contends that the searching officers exceeded the scope of the warrant and thus violated the Fourth Amendment when they seized firearms from a storage closet. The warrant authorized a search of the "premises" described as 1607 Windsor Street, apartment 8. The storage closet was located beneath stairs that led to Greg's second-floor apartment. It was reasonable for the officers to believe that they could search a structure "appurtenant to the premises" pursuant to a warrant authorizing a search of the premises. *See United States v. Fagan*, 577 F.3d 10, 13 (1st Cir. 2009). It was also reasonable for the officers to conclude that the storage closet—for which Greg had a key, and over which he admitted control—was appurtenant to the apartment. In similar circumstances, this court held that a resident's consent to search an apartment included authority to search a locked storage room that was located ten feet outside of the door of the apartment, where the resident's lease included access to the room and the resident possessed a key. *United States v. Ware*, 890 F.2d 1008, 1010-11 (8th Cir. 1989); *see also United States v. Principe*, 499 F.2d 1135, 1137 (1st Cir. 1974) (holding that cabinet located three to six feet from apartment was appurtenant thereto and properly searched). The search was reasonable; at a minimum, the officers are entitled to qualified immunity for the scope of their search.

Greg also challenges the district court's dismissal of his claims against prosecutors Knight and Rogers based on their alleged role in the seizure of his guns. Greg presented no evidence, however, that the prosecutors were involved in drafting or executing the search warrant, so they are not responsible for any constitutional violations arising from the seizure of the weapons. *See Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). In any event, even if Knight or Rogers played a role in the

seizures, they would be entitled at least to qualified immunity for the same reasons that the officers are not subject to suit. *See Burns v. Reed*, 500 U.S. 478, 486-87, 496 (1991).

C.

The Rodgerses argue that officials deprived them of property without due process of law by retaining their firearms at the police department without a post-deprivation hearing. The district court ruled that the guns were properly retained because they were potential evidence in future court proceedings, and that officials at a minimum were entitled to qualified immunity.

"[W]hen seizing property for criminal investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation procedural due process as well." *Walters v. Wolf*, 660 F.3d 307, 314 (8th Cir. 2011) (internal quotation marks omitted). Where retention of evidence is justified by pending charges or an arrest warrant, no further process is required. *Id*.; *United States v. David*, 131 F.3d 55, 59 (2d Cir. 1997). Likewise, if evidence is "needed for an ongoing or proposed specific investigation," law enforcement authorities are entitled to retain it. *Sovereign News Co. v. United States*, 690 F.2d 569, 578 (6th Cir. 1982).

The criminal charge against Greg was pending or the subject of appellate proceedings through April 30, 2013. Throughout that time, prosecutors and police had a reasonable basis to retain the seized firearms as evidence that Greg unlawfully possessed a firearm. Although some of the firearms belonged to Allan, they were seized from a storage locker to which Greg had access, and it was reasonable for officials to believe that they could be evidence of unlawful possession by Greg. All but the Browning 9mm pistol were returned to Allan or Greg by the end of October 2012, before Greg's criminal case was resolved, so the district court correctly dismissed claims based on the retention of those firearms.

Police returned the Browning pistol to Greg within three months after the state supreme court refused to hear an appeal in Greg's criminal case. Given the need for information about legal proceedings to flow from the court to prosecutors to the police department and the evidence custodian, retention for that relatively brief period without further hearing was reasonable and thus did not violate the Constitution. *Cf. Walters*, 660 F.3d at 310, 315 (holding retention after dismissal of charges was unconstitutional deprivation where officials refused to return property until a court order instructed them to do so); *Lathon v. City of St. Louis*, 242 F.3d 841, 843-44 (8th Cir. 2001) (same). The prosecutors who instructed the officers to retain the guns as evidence are entitled to absolute immunity. *Thompson v. Walbran*, 990 F.2d 403, 404-05 (8th Cir. 1993) (per curiam); *see also Imbler*, 424 U.S. at 430-31.

D.

The Rodgerses appeal the dismissal of claims based on the Second Amendment. They argue that officers, and any prosecutor who directed them, infringed their right to bear arms by seizing and retaining the firearms. Lawful seizure and retention of firearms, however, does not violate the Second Amendment. Indeed, this court has held that even the *unlawful* retention of specific firearms does not violate the Second Amendment, because the seizure of one firearm does not prohibit the owner from retaining or acquiring other firearms. *Walters*, 660 F.3d at 317-18. Greg also contends that the prosecutor defendants violated his right to bear arms by urging the court to adopt a condition of release that forbade Greg to possess a firearm. As the district court observed, the state court adopted the condition at the urging of a prosecutor who is not a defendant, and, in any event, the defendant prosecutors are absolutely immune from suit over their pleadings in the criminal case. *Imbler*, 424 U.S. at 430-31. The district court correctly dismissed the Second Amendment claims.

-9-

E.

Greg Rodgers next argues that the district court erred in dismissing his claims alleging that officers arrested him and caused him to be prosecuted in retaliation for the exercise of his First Amendment right to freedom of speech. As of 2011, an officer was entitled to qualified immunity against this type of retaliation claim if an arrest or prosecution was supported by probable cause. *Reichle v. Howards*, 132 S. Ct. 2088, 2096-97 (2012). The qualified immunity extends further to an action based on at least "arguable" probable cause. *McCabe v. Parker*, 608 F.3d 1068, 1078-79 (8th Cir. 2010); *Thayer v. Chiczewski*, 705 F.3d 237, 253 (7th Cir. 2012). For reasons discussed in connection with Greg's Fourth Amendment claims, a reasonable officer in 2011 could have believed that there was probable cause to charge Greg with unlawful use of a firearm based on carrying a concealed weapon or unlawful possession of a firearm as a fugitive from justice. Therefore, the district court was correct to dismiss the First Amendment claims against the officers. The prosecutors are entitled to absolute immunity for their decision to prosecute Greg. *See Imbler*, 424 U.S. at 430-31.

F.

The Rodgerses dispute the district court's grant of summary judgment for the City of Columbia and Boone County on claims that they failed adequately to train their employees. Greg argues that the municipalities failed to train police officers and prosecutors regarding a citizen's rights, under Mo. Rev. Stat. § 571.030.3, to carry a concealed weapon in common areas of leased property, and about the validity in Missouri of concealed carry permits issued in Florida.

A municipality may be liable under § 1983 for failure to train where (1) the municipality's training practices were inadequate; (2) the municipality was deliberately indifferent to the constitutional rights of others, such that the "failure to

train reflects a 'deliberate' or 'conscious' choice" by the municipality; and (3) an alleged deficiency in the training procedures actually caused the plaintiff's constitutional injury. *City of Canton v. Harris*, 489 U.S. 378, 388-91 (1989); *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996). Municipalities do not enjoy qualified immunity, but a municipality "cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (en banc). To establish municipal liability, a plaintiff must first show that an individual defendant committed a constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986).

Greg has not established a submissible claim that the municipalities were deliberately indifferent to the rights of citizens to carry concealed weapons. It was not clearly established that a citizen without a permit is permitted to carry a concealed weapon in common areas of an apartment complex or other leasehold. The lack of clarity regarding the scope of Mo. Rev. Stat. § 571.030.3 "undermines the assertion that a municipality *deliberately* ignored an *obvious* need for additional safeguards." *Szabla*, 486 F.3d at 394.

The City of Columbia is not liable for failing to instruct officers that Florida concealed carry permits are entitled to reciprocity, because any failure to do so did not cause Greg's arrest or prosecution. Greg has presented no evidence that the arresting officer who recommended charges had prior knowledge that Greg was issued a Florida permit, and it was not obvious that officers were required promptly to investigate Greg's assertion during his arrest that he was issued a Florida permit that he did not carry on his person. The related allegation that Boone County failed adequately to train prosecutors about reciprocity of permits is belied by the record. The record shows that after Greg's counsel notified the prosecutor that Greg had a Florida permit, R. Doc. 69-9, at 2, the prosecutor amended the complaint to withdraw the concealed carrying charge and to substitute the charge of unlawful possession by

-11-

a fugitive from justice. R. Doc. 69-9, at 3. A "mere allegation of inadequate training will not give rise to a genuine dispute of material fact on the subject." *Seymour v. City of Des Moines*, 519 F.3d 790, 801 (8th Cir. 2008).

G.

The Rodgerses argue finally that the district judge was not authorized as a judge in senior status to preside over this case, and that the judge should have recused herself. The claim that a senior judge lacks authority to adjudicate cases under Article III is foreclosed by precedent. *Williams v. Decker*, 767 F.3d 734, 743 (8th Cir. 2014). The recusal claims appear for the first time on appeal, so we review for plain error, *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 663 (8th Cir. 2003), and we find none. That the Rodgerses' counsel filed a judicial complaint against the district judge in previous, unrelated litigation is insufficient to establish that the judge's impartiality in this matter might reasonably be questioned. That the judge formerly served as a municipal judge in Columbia likewise raises no reasonable question about appearance of impartiality, and there is no evidence of bias.

III.

The Franklin appeal involves a prosecution of Raymond Franklin and a seizure of firearms owned by Robert Franklin. In December 2008, federal and state law enforcement officers sought to arrest a fugitive named Billy Rogers in a drug trafficking investigation. They traced Rogers to Robert Franklin's residence at 1670 Sonora Drive in Columbia. Officers asked Robert either to direct Rogers outside or to allow officers to search the home. Robert refused, so officers secured a warrant that authorized the search of Robert's home for "evidence of drug trafficking" and the arrest of Rogers.

During the ensuing search, officers seized twelve firearms, including a Vulcan .45 caliber handgun from a locked bedroom. The bedroom also contained pieces of mail addressed to Raymond Franklin at 1670 Sonora Drive, a package with Raymond's name on it, and correspondence from the Circuit Court of Boone County addressed to Raymond. Officers also seized drug paraphernalia and small quantities of cocaine and marijuana from other locations in the home.

On June 30, 2010, Sergeant Geoffrey Jones executed a probable cause statement for prosecutors alleging that Raymond Franklin, on the date of the search, unlawfully possessed the Vulcan .45 as a previously convicted felon. *See* Mo. Rev. Stat. § 571.070.1(1). A county prosecutor signed a criminal complaint alleging that Raymond committed the offense, and Raymond was arrested. Raymond had been convicted of a felony drug charge in 2007, and he moved from Missouri to North Carolina in 2008 while serving a sentence of probation. After the 2010 arrest, a state court revoked Raymond's probation. In April 2011, Missouri prosecutors dismissed the firearms charge against Raymond.

Robert's firearms were held by the Columbia Police Department from December 15, 2008, through August 23, 2012. On August 23, 2012, all but one gun, a Remington Model 870, was released to Robert's designee. The Remington had been reported stolen, and police returned that firearm to its registered owner.

IV.

A.

Raymond Franklin argues that officers and prosecutors violated his Fourth Amendment rights because they did not have probable cause to arrest and prosecute him for unlawful possession of a firearm. The prosecutors are entitled to absolute immunity for their initiation of the prosecution, *see Imbler*, 424 U.S. at 430-31, and

-13-

the district court properly dismissed Franklin's claim against them. One of the police officer defendants, Kenneth Burton, was not involved in the arrest or prosecution, so there is no merit to a claim against him.

As to Jones, the officer who prepared the probable cause statement submitted with the warrant application for Raymond Franklin's arrest, we conclude that there was probable cause for the arrest and prosecution, and thus no violation of the Fourth Amendment. A person commits the crime of unlawful possession of a firearm if he has been convicted of a felony under Missouri law and knowingly possesses a firearm. Mo. Rev. Stat. § 571.070.1(1). Possession may be actual or constructive, and a person has "constructive possession" if he "has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons." Mo. Rev. Stat. § 556.061(22). Constructive possession does not require exclusive control or physical presence, and circumstantial evidence—such as "finding defendant's personal belongings" with firearms—can establish possession. *State v. Evans*, 410 S.W.3d 258, 263 (Mo. Ct. App. 2013).

Police found the Vulcan .45 in a bedroom along with several pieces of mail addressed to Raymond Franklin at 1670 Sonora Drive and a package with Raymond's name on it. This evidence was sufficient to establish probable cause that Raymond constructively possessed the gun. Raymond argues that because his probation supervision had been transferred to North Carolina, there could be no probable cause that he possessed a firearm in Missouri, but out-of-state supervision alone did not foreclose a prudent officer from suspecting based on circumstantial evidence that Raymond was in Missouri nonetheless. There was probable cause to believe that Raymond possessed the firearm as a convicted felon, and the arresting officer did not violate Raymond's Fourth Amendment rights.

-14-

B.

The Franklins assert that police officers unlawfully seized firearms during the search of Robert's residence, because the warrant authorized only a search for "[e]vidence of drug trafficking." Firearms, however, are tools of the drug trafficking trade, and officers with probable cause to search for drug trafficking evidence reasonably could have determined that firearms in proximity to drugs or drug paraphernalia were within the scope of the warrant. *See United States v. Nichols*, 344 F.3d 793, 798-99 (8th Cir. 2003) (per curiam). The firearms, moreover, were in plain view within areas to which officers had lawful access, so whether or not the firearms came within the terms of the warrant, the officers permissibly could seize the guns based on probable cause that they were evidence of a crime. *See Horton v. California*, 496 U.S. 128, 142 (1990). The district court properly granted summary judgment for the prosecutor defendants on this claim, because there was no evidence that they participated in the drafting, review, or execution of the search warrant. *See Parrish*, 594 F.3d at 1001.

C.

Robert Franklin also argues that the officers and prosecutors deprived him of property without due process of law by retaining his firearms without a post-deprivation hearing. The district court ruled that the authorities properly retained the guns as potential evidence in federal or state court proceedings, and that officers and prosecutors were at a minimum entitled to qualified immunity.

The Columbia police officers retained the Vulcan .45 while unlawful possession of a weapon charges were pending against Raymond. After the charge was dismissed in April 2011, officers continued to retain the firearm pursuant to prosecutor Richard Hicks's recommendation that the Vulcan .45 would be needed as evidence for refiling charges against Raymond. As to the other firearms, Officer

-15-

Jones was advised that the guns may have been relevant evidence in a federal investigation of a drug conspiracy involving Billy Rogers, and Jones communicated with federal prosecutors about the status of the guns. Officer Jones ultimately directed the police department to release the guns in August 2012 after a federal prosecutor informed him that the guns were no longer needed for the federal investigation.

This court has recognized a due process claim under § 1983 where police officers refuse to return seized items to their owner without a court order after it is determined that the items were not contraband or required as evidence in a court proceeding. *Lathon*, 242 F.3d at 843-44. In this case, however, police retained the firearms because federal and state prosecutors advised them that the guns were potential evidence in ongoing criminal investigations, and there was a reasonable basis for the officers to believe there was a legitimate investigative purpose for the retention. At a minimum, the act of retaining the guns did not violate clearly established law. The prosecutors are entitled to absolute immunity for recommending that the Vulcan .45 be retained for Raymond's prosecution and for the potential refiling of charges. *See Thompson*, 990 F.2d at 404-05.

Robert Franklin further argues that the officers' transfer of the Remington 870 shotgun to its registered owner violated procedures for the return of unclaimed seized property, as set forth in Mo. Rev. Stat. § 542.301.1. "A violation of state law, without more, is not the equivalent of a violation of the Fourteenth Amendment." *Meis v. Gunter*, 906 F.2d 364, 369 (8th Cir. 1990). Insofar as Robert argues that the transfer of the shotgun without a post-deprivation proceeding violated his due process rights, Robert has failed to present sufficient evidence that he had a property interest in the shotgun. Robert was not the registered owner of the gun, the gun had been reported stolen, and Robert testified in his deposition that he "[couldn't] really say" if the gun belonged to him. *See generally Bd. of Regents v. Roth*, 408 U.S. 564, 570 (1972).

-16-

D.

Robert Franklin disputes the dismissal of his claim that officers arrested and prosecuted his son Raymond in retaliation for Robert's exercise of his First Amendment right by withholding consent to search his home. But even assuming the unlikely proposition that an arrest of *Raymond* could amount to a violation of *Robert's* rights under the First Amendment, *see Smith v. Frye*, 488 F.3d 263, 273 (4th Cir. 2007), the district court correctly dismissed the claim against officers because there was probable cause that Raymond constructively possessed the Vulcan .45 firearm in violation of Missouri law. *See Reichle*, 132 S. Ct. at 2096-97. The prosecutors are entitled to absolute immunity for their decision to pursue the unlawful possession charge. *See Brodnicki*, 75 F.3d at 1266. Raymond separately advances a claim that officers and prosecutors arrested and prosecuted him because of his race. This equal protection claim fails because Raymond presented no direct evidence of racial discrimination or indirect evidence that similarly situated persons were treated differently. *See Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir. 2003).

E.

The Franklins appeal the dismissal of their claims against the City of Columbia and Boone County for failure to train employees. The Franklins contend that the district court erred in determining that the municipalities were not liable for failure to train officers and prosecutors regarding the law of constructive possession, the scope of search warrants, and the due process requirements for the retention of seized evidence. Because we conclude that no official violated the constitutional rights of the Franklins, the related claim for failure to train also fails. *Heller*, 475 U.S. at 798-99. At a minimum, the municipalities did not exhibit deliberate indifference by ignoring an obvious need to train officials about respecting constitutional rights. *See Szabla*, 486 F.3d at 393.

F.

Like the Rodgerses, the Franklins challenge the authority of the district judge to preside as a judge in senior status, and they argue for the first time on appeal that the judge should have recused herself. For reasons discussed with respect to the Rodgers appeal, these points are without merit.

\* \* \*

The judgments of the district court are affirmed.

_____