22-3158-cr (L)
*United States v. Panos*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of February, two thousand twenty-four.

Present:

RICHARD C. WESLEY,
DENNY CHIN,
EUNICE C. LEE,
    *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

    *Appellee,*

v.                                                      22-3158(L), 22-3188(Con)

SPYROS PANOS,

    *Defendant-Appellant.*

_____

For Appellee:                          MARGERY FEINZIG (David Abramowicz, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern

District of New York, New York, NY.

For Defendant-Appellant: EZRA SPILKE, Law Offices of Ezra Spilke, PLLC, Brooklyn, NY.

Appeal from a November 30, 2022 judgment of conviction of the United States District Court for the Southern District of New York (Karas, *J.*), and a December 14, 2022 judgment of revocation of supervised release of the United States District Court for the Southern District of New York (Román, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Spyros Panos appeals from (1) a judgment of conviction imposed on November 30, 2022 (Karas, *J.*); and (2) a judgment of revocation of supervised release entered on December 14, 2022 (Román, *J.*), both in the United States District Court for the Southern District of New York.

After having been convicted of health care fraud in 2013, Panos was sentenced to 54 months' imprisonment followed by two years of supervised release, as well as being required to surrender his license to practice medicine. The government alleges that prior to his surrender in 2014, and while on supervised release from 2016 to 2018, Panos defrauded medical peer review companies ("PRCs") by using another doctor's credentialing information without their permission and wrote reports for various PRCs under the guise of being a licensed doctor.

Following his arrest in 2018 on these new allegations, Panos pleaded guilty in October 2020 to a three-count indictment which charged him with wire fraud, in violation of 18 U.S.C § 1343, health care fraud, in violation of 18 U.S.C. § 1347, and aggravated identity theft, in violation

2

of 18 U.S.C. § 1028A. The district court (Karas, *J.*) sentenced Panos to 111 months' imprisonment, to be followed by three years' supervised release. Following the sentencing, the district court (Román, *J.*) found that Panos had violated the terms of his supervised release from the prior conviction and sentenced him to a term of 12 months' imprisonment, to be served consecutively to his sentence of 111 months' imprisonment.

On appeal, Panos argues that the district court erred in denying his motion to withdraw his guilty plea because it was involuntary due to ineffective assistance of counsel and because he was denied due process, that the district court improperly denied Panos's post-plea motion to dismiss the indictment, that the district court abused its discretion in denying Panos's motion for a return of property, and that the district court erred in sentencing Panos on his revocation of supervised release by not allowing him adequate opportunity to address the court.[1] We assume the parties' familiarity with the remaining underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

\* \* \*

## I.     Panos's Motion to Withdraw His Plea

Panos argues that the district court erred in denying his motion to withdraw his guilty plea because, *inter alia*, his plea was not voluntary, as his attorney was conflicted and therefore provided ineffective assistance of counsel, and he was denied due process in his hearing under *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982) (a "*Curcio*" hearing).

---

[1] Panos raised additional arguments in *pro se* briefing to supplement his counsel's briefing. We have considered all of Panos's arguments, whether they were submitted by counsel or *pro se*.

"We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion and any findings of fact in connection with that decision for clear error." *United States v. Juncal*, 245 F.3d 166, 170–71 (2d Cir. 2001). It is important to note that "a defendant has no absolute right to withdraw his plea of guilty," *United States v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011) (alteration adopted) (quoting *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)), and "[t]he defendant bears the burden of showing that there are valid grounds for withdrawal," *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016) (internal quotation marks omitted).

a.  Relevant Background

Trial was set to begin on November 2, 2020, with a pretrial conference set for October 29. At that point, the only plea agreement conveyed by the government, offered on June 28, 2018, contained a stipulated Guidelines range of 75 to 87 months' imprisonment. On October 28, Panos's counsel (Lawrence Fisher) notified the court and the government that Panos planned on pleading guilty. However, the government had just filed a letter with the court indicating that it believed some of the potential exhibits for trial that Panos had provided them, through his counsel, were in fact fraudulent. The government contacted Fisher, informing him that it had calculated a new stipulated Guidelines range of 111 to 132 months' imprisonment—adding levels for obstruction of justice and not giving Panos credit for acceptance of responsibility. Fisher then notified the district court and the government that he wished to be removed as counsel due to a conflict of interest, as he might be a witness should the government decide to pursue obstruction charges against Panos. Fisher further indicated that a new plea agreement might be appropriate. The government drafted a new plea agreement containing a stipulated Guidelines range of 111 to 132 months' imprisonment.

4

At the October 29, 2020 hearing, the district court made inquiries about Fisher's conflict. The government indicated that it had "no reason to believe" Fisher was involved in any obstruction, and that if Panos were to plead pursuant to the new agreement, he "would get coverage for any potential future obstruction of justice charge." App'x at 67. After discussion with the government and Fisher, the court concluded that Fisher might have a waivable, potential conflict that would only become an actual conflict if the government were forced to prove the allegations of obstruction and "Mr. Fisher [became] part of either the prosecution's case or the defense case." App'x at 73. The district court allowed Panos and Fisher to confer, stressing that "we're not in a rush here" and that the court "want[ed] to make sure that Mr. Panos is comfortable with whatever decision he makes." App'x at 77.

After conferring with Panos, Fisher stated that Panos wished to proceed with the plea. Panos signed the plea agreement, but the court advised that prior to taking the plea, it needed to conduct a *Curcio* hearing to ensure Panos was willing to go forward with Fisher as his attorney. The court conducted a lengthy hearing, where it explained Fisher's potential conflict, how it could possibly affect his advice on this plea deal, and that Panos had a right to be represented by a different lawyer for the purposes of the *Curcio* hearing. The court affirmed that Panos understood the issue by having Panos explain in his own words the contours of Fisher's potential conflict.

After Panos confirmed that he understood the potential conflict and his rights, Panos stated that he did not want a different lawyer to represent him, that he did not want more time to think, and that he was satisfied with Fisher's representation. Finally, the court informed Panos that by deciding to keep Fisher as his lawyer, he would be waiving any future argument that his plea was

invalid due to a conflict. Panos confirmed that he understood this. The court then went on to conclude that Fisher's conflict was waivable and that Panos expressed his desire to waive it. It then gave Panos and Fisher another recess to confer and "make sure he wants to go forward with the plea." App'x at 123. After the recess, Panos confirmed he understood the new plea agreement and pleaded guilty pursuant to it.

On January 24, 2021, Panos moved to withdraw his guilty plea. The district court denied that motion on October 6, 2021.

### b. Claims of Ineffective Assistance of Counsel

We evaluate conflict of interest claims as ineffective assistance of counsel cases, submitting them to the two-part test defined by *Strickland v. Washington*. 466 U.S. 668, 687 (1984) (holding that to prove ineffective assistance of counsel, a defendant must show that counsel's performance was deficient *and* that the "deficient performance prejudiced the defense"). It follows that for a defendant to prove that the conflict violated their Sixth Amendment right, they must show prejudice. *See Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993). "However, prejudice is presumed when a defendant establishes that her attorney had an actual conflict of interest that adversely affected the attorney's performance." *Id*.

While we review claims of ineffective assistance of counsel *de novo*, *see United States v. Kliti*, 156 F.3d 150, 152–53 (2d Cir. 1998), when those claims are based on allegations of a conflict, "[t]he evaluation of the facts and circumstances of each case . . . must be left primarily to the informed judgment of the trial court," *Wheat v. United States*, 486 U.S. 153, 164 (1988).

When presented with a possibility of a conflict of interest, a district court has two obligations. First, it must conduct an inquiry into the conflict, investigating the facts to determine

if an actual or potential conflict exists. *See United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994). Second, if the district court determines a potential conflict of interest is present, "the court should follow the procedures set out in *Curcio*, 680 F.2d at 888–90, in order to obtain directly from the defendant a valid waiver of his right to a non-conflicted lawyer." *Id.*

Panos argues on appeal that Fisher's conflict was actual, not potential, and therefore was unwaivable. "[T]he class of cases in which an attorney conflict is truly unwaivable is a very narrow one[.]" *United States v. Cain*, 671 F.3d 271, 294 (2d Cir. 2012) (internal quotation marks omitted). We have previously held that a *per se* unwaivable conflict exists "when an attorney is implicated in the crimes of his or her client." *United States v. Fulton*, 5 F.3d 605, 611 (2d Cir. 1993).

As the district court noted, the government did "not suspect that Mr. Fisher had anything to do with the doctoring of those documents . . . . [T]hat's what distinguishes this case from those where the lawyer basically was suspected of being involved in the very same crime." App'x at 119. It is true that if Panos had not pleaded guilty and the government had pursued obstruction charges, Fisher *may* have been called to testify. This is exactly why, however, the conflict was *potential*. Panos provides no authority, nor are we aware of any, which holds the mere *possibility* of an attorney being called to testify in a hearing involving their client amounts to a *per se* unwaivable conflict. Hence, we cannot find that "the district court exceeded the broad latitude which must be accorded it in . . . deci[ding]" that Fisher's conflict was waivable. *Cain*, 671 F.3d at 296 (internal quotation marks omitted).

Panos also contends that Fisher made various missteps that rose to the level of ineffective assistance of counsel. These include, among other allegations, that Fisher failed to advise Panos

7

that the plea agreement did not provide him with a benefit, as he was still punished for obstructing justice, and that Fisher failed to advise Panos he had a colorable trial defense to count two (health care fraud) of the indictment. None of these allegations overcome the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks omitted).

Panos did in fact receive a benefit from the plea agreement. In *United States v. Lutchman*, 910 F.3d 33 (2d Cir. 2018), on which Panos relies in his briefing, this Court noted that one reason a plea agreement gave no benefit to the defendant was that "the government [had] not articulated or identified any additional counts that could have been proven at trial." *Id*. at 38. That is definitely not the case here, where Panos avoided the additional charge of obstruction of justice by entering into the plea agreement.

Panos's claim that Fisher was deficient in failing to advise him that he could mount a trial defense claiming PRCs do not qualify as "healthcare benefit programs," such that Panos did not commit health care fraud, is equally meritless. Appellant Br. at 26. We have previously found that "Congress intended for [18 U.S.C. § 1347] to include within its scope a wide range of conduct so that all forms of health care fraud would be proscribed." *United States v. Lucien*, 347 F.3d 45, 51 (2d Cir. 2003). Given our broad interpretation of the statute, it is far from certain that this trial argument was colorable at all, and we cannot find that Fisher was ineffective in failing to pursue it. *See United States v. Kirsh*, 54 F.3d 1062, 1072 (2d Cir. 1995) (reasoning that an attorney's failure to "pursue certain motions that lacked merit . . . must be considered strategic" and does not amount to ineffective assistance of counsel).

8

c. Due Process Claims

Panos complains that the district court erred in denying his motion to withdraw his plea because he was not given sufficient time to contemplate the risks of Fisher's alleged conflict and consider the plea agreement. This argument is belied by the record. At a *Curcio* hearing, the court must advise a defendant of the risks of the conflict, determine that the defendant understands those risks through questioning, and "give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel." *United States v. Arrington*, 941 F.3d 24, 40 (2d Cir. 2019) (quoting *United States v. Iorizzo*, 786 F.2d 52, 59 (2d Cir. 1986)).

*Curcio*, however, did not delineate a specific amount of time that a defendant must be given. On the record before us, we see a district court that gave Panos many opportunities to take more time to consider his options, explicitly noting that it was "not in a rush." App'x at 77. The court also conducted an extensive *Curcio* hearing, ensuring that Panos understood the contours of Fisher's potential conflict by having Panos explain the nature and possible consequences of the conflict back to the court. Panos has presented no evidence that the court did not give him sufficient time to understand and contemplate the risks of Fisher's potential conflict or consider the plea.

Reviewing the district court's findings of facts for "clear error," we cannot find any "abuse of discretion" in the district court's decision to deny Panos's motion to withdraw his plea. *Juncal*, 254 F.3d at 170–71.

II.    **Panos's Post-Plea Motion to Dismiss the Indictment**

Panos claims that the district court erred in denying his request to dismiss the indictment

9

against him, arguing, *inter alia*, that there were deficiencies in the grand jury proceedings and he is actually innocent. The district court denied this request, stating "there's just no merit to it." App'x at 236. Indeed, "[i]t is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and . . . waives all challenges to the prosecution except those going to the court's jurisdiction." *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (internal citation omitted). As Panos's claims are not jurisdictional, he has waived his claims challenging the indictment by pleading guilty.

## III. Panos's Motion for Return of Property

Panos contends on appeal that the district court erred in denying his post-plea motion for return of property, which sought the return of a medical license reinstatement packet, prescription pads, and a medical bag containing medical examination tools and instruments. We review the grant or denial of a motion for return of property for "abuse of discretion, but review *de novo* any legal conclusion underlying such a decision." *United States v. Zaleski*, 686 F.3d 90, 92 (2d Cir. 2012).

"A person aggrieved . . . by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). However, "contraband" does not fall under the types of property that must generally be returned. *United States v. David*, 131 F.3d 55, 59 (2d Cir. 1997) (quoting *United States v. Francis*, 646 F.2d 251, 262 (6th Cir. 1981)). "[D]erivative contraband" has been defined by one of our sister circuits as "things that are not ordinarily illegal . . . [but] become forfeitable because of their relationship with a criminal act." *United States v. 37.29 Pounds of Semi-Precious Stones*, 7 F.3d 480, 485 (6th Cir. 1993), *abrogated on other grounds by United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993).

10

The prescription pads are properly categorized as derivative contraband. The district court articulated that "[Panos] doesn't have an entitlement to access the very tools that he might use to commit more fraud pretending to be a doctor" and that it was "not going to risk him hurting people." App'x at 236. We find no abuse of discretion in the district court's reasoning that Panos no longer had an entitlement to the prescription pads, given that his very crime was to pose as a licensed doctor.[2]

**IV.    Panos's Sentencing for Violation of Supervised Release**

Panos argues that the district court did not allow him sufficient opportunity to address the court before imposing a 12-month sentence of incarceration for violating his terms of supervised release. This argument is without merit. Federal Rule of Criminal Procedure 32.1(b)(2)(E) provides that a defendant facing revocation must be given "an opportunity to make a statement." However, resentencing is not required if a judge who "announce[s] a sentence before giving the defendant an opportunity to speak" repairs their mistake and immediately "offer[s] the defendant the right of allocution." *United States v. Margiotti*, 85 F.3d 100, 103 (2d Cir. 1996) (per curiam).

That is precisely what happened here. The court (Román, *J.*) began to sentence Panos, but immediately stopped, asking defense counsel if they wished to be heard. The court then heard from defense counsel, the government, and Panos himself, and even announced that it was starting with a "blank slate." App'x at 317. After hearing from Panos, the court announced his sentence

---

[2] As to the other items subject to the motion, the government contended that it never seized and was not in possession of the medical license reinstatement packet and the medical bag. Given that Panos has filed no affidavit claiming otherwise, and those items are also arguably derivative contraband as Panos does not have a license to practice medicine, we decline to hold that the district court abused its discretion in denying Panos's motion as a whole.

of 12 months' imprisonment to run consecutively to the sentence for 111 months' imprisonment. Given that the court immediately corrected its mistake, we find no error in the revocation proceeding.

*       *       *

We have considered Panos's remaining arguments and find them to be without merit. For the foregoing reasons, the judgments of the district court are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12